Filed 2/25/15  P. v. McRoberts CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL MCROBERTS,<br><br>        Defendant and Appellant. | C071087<br><br>(Super. Ct. No. CI59446) |

Appellant Daniel McRoberts, a sexually violent predator (SVP) within the meaning of Welfare and Institutions Code section 6600 et seq. (statutory references that follow are to this code), appeals from the trial court's order dismissing his petition for conditional release or unconditional discharge under section 6608.  McRoberts contends he was entitled to a full evidentiary hearing.  We affirm the dismissal.

STATUTORY FRAMEWORK

The SVP statutes provide for indeterminate commitment in a state hospital for violent sex offenders who have "a diagnosed mental disorder that makes the person a

1

danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§§ 6600, 6604.) We refer to the version of the statutes in effect throughout the proceedings in the trial court. (Stats. 2006, ch. 337; Initiative Measure (Prop. 83), approved Nov. 7, 2006.) The State Department of State Hospitals (SDSH), formerly the Department of Mental Health (DMH), performs an annual evaluation of the SVP. (§§ 6600.05, 6605, subd. (a).)

An SVP may petition the court for conditional release from the state hospital, with or without the concurrence of SDSH. (§§ 6605, 6608.)

Where, as here, the SVP files a petition *without* concurrence of the SDSH, "the court shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing." (§ 6608, subd. (a).) If the court deems the petition *not* frivolous, the court holds a hearing "to determine whether the person committed would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community." (§ 6608, subd. (d).) At that hearing, the SVP has the burden of proof by a preponderance of the evidence. (§ 6608, subd. (*i*).)

In contrast, if SDSH in its annual report determines the person no longer meets the SVP definition or can be conditionally released under conditions that adequately protect the community, SDSH can authorize the committed person to petition the court for release. (§ 6605, subd. (b).) In that case, the court "shall order a show cause hearing at which the court can consider the petition and any accompanying documentation provided by the medical director, the prosecuting attorney, or the committed person." (§ 6605, subd. (b).) "If the court at the show cause hearing determines that probable cause exists to believe that the committed person's diagnosed mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged, then the court shall set a hearing on the

2

issue." (§ 6605, subd. (c).) Each side has the right to a jury trial and to have an expert evaluate the person. (§ 6605, subd. (d).) The burden of proof is on the state to prove beyond a reasonable doubt that the person's diagnosed mental disorder remains such that he is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged. (§ 6605, subd. (d).)

FACTS AND PROCEEDINGS

In November 2008, McRoberts, then age 25, was adjudicated an SVP based on various sex offenses -- including sexual battery, lewd and lascivious act with a child under age 14, attempted lewd act on a child under age 14, and indecent exposure -- committed between 1998 and 2004. He was committed to Coalinga State Hospital.

On September 2, 2011, McRoberts in propria persona filed a petition for conditional release or unconditional discharge under section 6608, subdivision (a), *without* the recommendation or concurrence of the Director of Mental Health.

McRoberts submitted an "OFFER OF PROOF" listing 31 persons currently or formerly connected with Coalinga State Hospital -- from clinical psychologists to social workers to rehabilitation therapists to nurses to psychiatric technicians to an art therapist. He asserted two clinical psychologists were responsible for interviewing and evaluating "Phase Program" participants and were part of his "Phase Staffing" in 2011. Other clinical psychologists and one social worker were "group treatment facilitators" who facilitated group therapy and provided individual therapy sessions as needed and were or had been his primary treatment providers over a three-year period. Others were auxiliary group facilitators. Seventeen others, including two clinical psychologists, were staff responsible for McRoberts's daily care, welfare, and well-being, and had frequent interactions with him.

The offer of proof asserted, "These witnesses will provide testimony relevant to Petitioner's advancement in intensive in-patient treatment, amenability to outpatient

3

treatment, progress in overcoming barriers to discharge, and overall lack of impulsivity, dangerousness, or inappropriate behaviors, as well as his development of empathy and emotional awareness. These witnesses will also testify that Petitioner's condition has so changed as to render him no longer a significant risk to the community in that he is not likely to engage in sexually violent criminal behavior if conditionally released under supervision and treatment in the community, or unconditionally discharged." McRoberts also claimed documentary evidence -- Interdisciplinary Notes, Wellness and Recovery Plan Reports, Quarterly Progress Notes, and Staffing Summary -- would show he has done well at Coalinga, "has overcome all barriers to discharge," has made "significant progress" in treatment, has advanced to Phase III of the program [which has four phases], has matured and taken responsibility for his crimes, and has made "enormous changes to such an extent that he no longer poses any danger of reoffending." McRoberts verified the offer of proof was true to the best of his knowledge, but no declarations or documents were attached to the petition.

The trial court appointed counsel to represent McRoberts.

On October 17, 2011, McRoberts's new counsel appeared and asked for time to review the petition. The court noted the matter was already on the calendar for October 31, 2011, but neither Judge Scheuler nor the attorneys knew why. McRoberts's attorney said the court could make a ruling on the petition. The court said, "Well, what ruling might I make? That he's frivolous just because he made the . . . petition? I believe that I am entitled to dismiss a frivolous petition. However, frivolous doesn't just mean that the defendant is exercising his rights to ask for a hearing under the code section. [¶] I recognize that the very most recent report which was less than a year ago is not favorable to him, but I frankly cannot put all of that together in my head quickly enough to tell you that I am an expert and I am not going to dismiss. I would like the district attorney to look into it. I will certainly consider whatever input either side has as to what step we should take next, but there are steps allowed if I do not dismiss the petition in the

4

code sections." The court added, "I believe that, to be frank, the defendant appears to have listed as his witnesses just about every single person with whom he has come into contact at the state hospital. On its surface, given the report that was filed back on December 8, 2010, that is a suspicious looking petition. However, right now it's just a petition and I will leave it up to the district attorney to persuade the Court that it is frivolous or not, but I will continue this matter . . . ."

The deputy district attorney said a new annual report would likely be filed soon. The court reiterated, "this petition looks highly suspicious. I'm just not prepared off the top of my head, shooting from the hip on the bench to say that it's frivolous and dismiss it. Even though it looks frivolous to me, I would like somebody to take a look at the underlying file, specifically the district attorney, and argue that to me." The court said it would see counsel on the 31st and "[t]here is every possibility given the timing this is a frivolous motion."

On October 31, 2011, counsel advised the court that the hospital intended to release a new annual report in a couple of weeks. McRoberts's counsel offered declarations from appellant's care providers, the contents of which do not appear in the record. The deputy district attorney said, "I did brief research on the matter and I couldn't find anything exactly on point, but there was one case that indicated a petition accompanied by an offer of proof was enough to get it out of the frivolous petition nature." The court said, "Yes, but there has to be an offer of proof more than just if I call everyone who works at the institution they will support my petition. . . ." This exchange followed:

"THE COURT: Subsection (j) of [section 6608] requires that if the petition is not made by the director that no action be taken until it's referred to the director. There is also the question of whether this is a frivolous petition. I'm not sure, counsel, how you would like to proceed. Do you want me to rule on them one at a time or put this over

5

until when the new report comes in, because even if I ruled in your favor on frivolousness we'd still be referring it to the department for a report.

"[McRoberts's counsel]: I'd ask it be continued two weeks and hopefully we'll have that report and recommendation.

"THE COURT: I reserve jurisdiction over the issues of whether the petition itself is frivolous and note on the record that -- if I set a hearing, I'd first have to refer it to the director, it's already referred to the director in two weeks; therefore, it seems like a reasonable compromise right now to simply set it out."

The court asked counsel what she wanted done with the declarations. She said she had no preference. The court said, "you'd be handing them to me if I was going to rule on whether it's frivolous or not, since I'm not going to rule on that right now I'll hand it back to you." This court granted McRoberts's motion to augment the record to include witness statements and declarations assertedly submitted in the trial court, but the superior court clerk advised no such documents existed.

The annual report issued in November 2011, concluded McRoberts continued to have mental disorders that made him likely to engage in sexually violent predatory criminal behavior in the future. The evaluator, a SDSH clinical psychologist was not among the persons named in McRoberts's offer of proof but the evaluator mentioned consultation with persons named in the offer of proof. The report noted McRoberts was currently enrolled in Phase III of a four-phase sex offender program, had not yet completed the treatment program, and therefore had not yet had adequate treatment. He had generally done well in the controlled environment but continued to have behavior problems as seen from the interdisciplinary notes, with about 35 negative comments over the past year. A social worker saw progress over the previous few months and thought McRoberts could be conditionally released to outpatient treatment. Testing indicated McRoberts continued to try to deceive himself, evaluators and staff regarding the extent of his pathology. The Director concurred with the report.

6

The parties reconvened on November 21, 2011, with a different judge, Judge Abel. McRoberts's counsel said she had received the new report from the state hospital "but we are still nevertheless requesting a hearing on [the] petition." The court asked how long a hearing; she said half a day, and she had "numerous witnesses to subpoena." The court set it for January 17, 2012. The deputy district attorney said nothing.

On January 17, 2012, McRoberts's attorney asked for a continuance because she thought the petition may have been brought prematurely. The deputy district attorney did not object, and Judge Scheuler granted the continuance.

On February 27, 2012, Judge Scheuler had not reviewed the file because the court calendar said the matter was on only for resetting. The deputy district attorney stated McRoberts had nothing supporting his petition, other than a statement from someone on the nursing staff, who might not be qualified to offer an opinion on future dangerousness. McRoberts's lawyer said, "it is my understanding that the Court at some point has to, if it hasn't already, make a finding that probable cause exists based on the factors outlined in my client's petition. I believe perhaps in the past the Court may have done that. When it was previously set for hearing, my client had approximately 13 witnesses from the hospital that we intended on calling. However, I don't believe we could make a sufficient showing that they were material witnesses as to the ultimate opinion and I don't believe the Court would have approved the witness fees and/or several nights lodging that is needed and transportation costs to and from the airport. I believe at this point there currently are approximately 13 witnesses that my client anticipates [will be] call[ed] and be beneficial in regards to his petition." The trial court said it had not reviewed the petition and asked, "Are you both in agreement that this matter simply needs to be set for a time when I can determine probable cause?" Both attorneys said yes. The trial court set a date for "probable cause" and asked if anything else had been filed. McRoberts's counsel said she believed he may have filed a declaration at some point, and "I am assuming that the public defender criminal investigator is available in these cases to take

7

witness statements?" The court did not have an answer but said, "Make your request, if you have one, and we'll deal with it." The court reviewed the file and noted "There was probable cause date set for October 31st which was continued. It was then continued to January 17th. I assume it was getting continued because of the arrival of the annual report but it just kept getting continued. [¶] With both parties concurring until it got to today and somewhere along the line it lost the title of probable cause, therefore I did not check out that angle, therefore, once again, it is being continued by everyone's agreement . . . ."

At the hearing on March 12, 2012, the deputy district attorney began by conceding he had agreed to put it on for a probable cause hearing, but in reviewing the petition and attachments, "it is the People's position that he does not present or have or list any witnesses that would be competent to testify in this matter as to the dispositive issue, which is whether or not he still constitutes a threat to the community and is ready to be released. And it is the People's position, given that he just doesn't have any witnesses currently, I believe counsel has indicated that she doesn't anticipate any qualified witnesses, I don't see how that there can be a finding that this Petition has any current validity." The court agreed, "I have serious problems with the Petition also. But having seen that it was on for a Probable Cause Hearing, and a Probable Cause Hearing is pretty much like a Preliminary Hearing, evidentiary in nature, I thought perhaps it was on for a setting. . . ." McRoberts's lawyer said, "I believe it was on for a hearing for the Court to find that the Petition standing alone supports [McRoberts's] right to have a hearing. And in reviewing the Petition that my client filed in pro per, he indicates on the first page that he has lay witnesses' declarations and depositions that would show he no longer poses a threat to the health and safety of society, and that it is unlikely that he will engage in sexually violent criminal behavior if conditionally released. And that's on page. 1. [¶] Additionally, on page 4 he goes into what had previously been provided as an offer of proof. And that was in another case a treating psychiatrist, who would indicate that the

8

Petitioner was not likely to engage in sexually violent conduct. And in my client's Petition again on page 4, he indicates that his condition has changed, and he's unlikely to engage in sexually violent criminal behavior. [¶] In looking at the offer of proof, I believe when this was previously set for hearing I had numerous witnesses subpoenaed, and we had difficulty in getting their fees approved since we had to make a showing that they were necessary witnesses and that they could testify as to the ultimate question. And when my client listed the witnesses on page 1 of 9, the witnesses that he lists, Dr. Greer and Dr. Fleischman, those witnesses evaluated him for placement at a higher treatment level. He had completed Phase 1 and Phase 2. However, I didn't have anything from those witnesses to indicate that he was no longer a danger, and that he should be on outpatient. [¶] There are also three witnesses listed on page 2 of 8 that were his Phase 2 treatment group facilitators. And I believe in reading the report from the hospital, that those treatment facilitators facilitated him progressing to the next . . . [¶] . . . [¶] treatment level, not indicating that he should be released. [¶] And then on page 3 of 8 my client lists lots of psychiatric technicians and some clinical psychologists. I don't have anything from those individuals. In talking with some of the psychiatric technicians I believe they could say that he did participate, and he was progressing, and he did recognize his behavior and knew what he had to do. But I believe their statements and their notes are also covered in the doctor's report [¶] . . . [¶] that was filed after my client filed this Petition. On page 4 of 8 my client also alleges that the witnesses will testify that he's no longer a risk to the community if conditionally released. I just don't believe these licensed rehabilitation therapists would be qualified to offer that final conclusion as to whether or not he's a danger. So as to an offer of proof that they could testify to that, I don't believe that I have anything to support that." McRoberts's attorney said a licensed clinical social worker could testify McRoberts would benefit from more treatment but has made progress, but "I just don't think she deals with the ultimate issue . . . ." Finally, counsel said a "psych tech" would testify she believes McRoberts

9

has learned what not to do and would do everything in his power "to remain legit," and "based on that, the psych tech doesn't believe that he would re-offend."

The trial court stated:

"First of all, an offer of proof is simply a way to get to a Probable Cause Hearing, not a Probable Cause Hearing. A Probable Cause Hearing is evidentiary in nature. The Probable Cause Hearing by statute may allow any reports as hearsay, but I find no general rule like would apply to a Preliminary Hearing to specify people who can come in and recite testimony of others. Since we would possibly be dealing with experts, it's always possible that an expert can repeat the input of others in his or her testimony, but we have no witnesses here. We do have documentary evidence which is the last report filed. The November 3rd letter from the medical director concurs with the report. The report says it is the opinion of this evaluator that as a result of his diagnosed mental disorder, Mr. McRoberts remains likely to engage in sexually violent predatory criminal behavior in the future. That is definitely nothing that supports what the defendant has said in his Petition. What the defendant says in his Petition, first of all is, he lists like a laundry list of every -- possibly every person that's ever talked to him at Coalinga, from the top down, including a lot of people who probably didn't talk to him directly. His Petition is in conclusory language: These people will say something eventually that would give him what he prays for. There is no factual allegation. And even if there were a factual allegation, Doctor X will say that I should be released, for example, even if there were that allegation, this is a Probable Cause Hearing, and I have nothing in the Petition or in the file that would show any probable cause to allow a hearing. Therefore, my tentative ruling would simply be to find that this is a Probable Cause Hearing, there is no evidence offered, and to dismiss the Petition. Excuse me. There is evidence offered to support the Moving Party. There is documentary evidence that would definitely contradict the conclusions of the Moving Party, and my tentative ruling is to dismiss the Petition."

10

With no further argument from the attorneys, the trial court dismissed the petition.

DISCUSSION

McRoberts contends the trial court erred in dismissing his petition without a full evidentiary hearing. We disagree.

SVP proceedings are special proceedings of a civil nature, and the trial court has inherent authority to dismiss an SVP's petition seeking release. (*People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1408 (*Reynolds*).) On appeal, we apply the abuse of discretion standard. (*Ibid.*)

The apparent rationale for the trial court's threshold determination of frivolousness is "to deter multiple unsubstantiated requests and to reduce the administrative burden that might otherwise occur. . . ." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1148, fn. 14.) Frivolous in this context means that the petition "indisputably has no merit," and any reasonable attorney would agree the petition was totally and completely without merit. (*People v. McKee* (2010) 47 Cal.4th 1172, 1192 (*McKee I*); *People v. Olsen* (2014) 229 Cal.App.4th 981, 993 (*Olsen*); *People v. Collins* (2003) 110 Cal.App.4th 340, 349-350 (*Collins*).) To make this threshold determination, the trial court reviews the petition and any supporting attachments to determine if the defendant's position has some merit on the issue of whether he may qualify for conditional release. (*McKee I*, *supra*, 47 Cal.4th at p. 1192.) However, it is not necessary for the petition to append competent, admissible evidence. (*Collins, supra*, 110 Cal.App.4th at p. 350.) A petition is non-frivolous if the defendant has made a showing that he would not be a danger to others due to his diagnosed mental disorder while under supervision and treatment in the community. (*Olsen, supra*, 229 Cal.App.4th at p. 996.)

However, the trial court's threshold determination of frivolousness is not limited to the face of the petition and supporting documents because, if the petition for release is made by the SVP rather than the treatment facility, the trial court may consider the state

11

hospital's annual report in determining whether a petition is frivolous (*Olsen, supra*, 229 Cal.App.4th at p. 996).

McRoberts argues the trial court abused its discretion by applying the wrong legal standard and dismissing the petition after a "probable cause hearing" without allowing a full evidentiary hearing, since the statutes call for a probable cause hearing only when the SVP files a petition with concurrence by SDSH, which was not the case here. McRoberts claims the sole issue before the court was whether the petition was frivolous on its face, and since it was not, he was entitled to a full evidentiary hearing.

In response, the People claim the trial court had already deemed the petition to be nonfrivolous, because otherwise the court would not have set the matter for a hearing. The People do not claim the petition was frivolous. Instead, the People argue the lack of a full-fledged evidentiary hearing was "of no consequence" because McRoberts's counsel admitted they had no evidence, and the trial court deemed the proceeding was the full evidentiary hearing at which McRoberts had no evidence.

We reject the positions of both sides. The record clearly shows the trial court did *not* deem the petition nonfrivolous before the "probable cause hearing." At the "probable cause hearing" the court in effect determined the petition was frivolous -- based on the petition, the annual report, and the arguments of counsel, including the candid admission of McRoberts's counsel that none of the people listed in the offer of proof were both qualified and willing to testify that McRoberts was not likely to engage in sexually violent criminal behavior due to his mental disorder if released. The trial court, by considering the annual report endorsed by the Director, did not turn the frivolousness determination into an improper evidentiary hearing, because where the petition is made by the SVP without SDSH support, section 6608 subdivision (a) does not preclude the trial court from reviewing the Department's annual report in making its threshold determination of frivolousness. (*Olsen, supra*, 229 Cal.App.4th at p. 996.)

12

Clearly, the court and both attorneys were all confused about the proper procedure. But McRoberts through counsel expressly agreed (1) to have the court set the matter for a "probable cause hearing" and (2) to have the court consider the SDSH report. In essence, the trial court and the parties treated the hearing as a hearing on a motion to dismiss the petition. (*Reynolds, supra*, 181 Cal.App.4th at p. 1408 [trial court has authority to dismiss petition].)

Having agreed to these procedures, McRoberts cannot challenge them on appeal. "A party forfeits his or her right to attack error by implicitly agreeing or acquiescing at trial to the procedure objected to on appeal. [Citation.] A party who requests the court to act as it did has invited error. [Citation.] Thus, unless the failure to object constitutes ineffective assistance of counsel, . . . any error was forfeited." (*Reynolds, supra*, 181 Cal.App.4th at p. 1408.)

In *Reynolds*, the SVP's petition merely alleged (1) four years had passed since his initial commitment, making it less likely he would reoffend, and (2) before his recent recommitment proceeding he was ready to go to trial with an expert who would testify on his behalf. (*Reynolds*, *supra*, 181 Cal.App.4th at p. 1405.) At a hearing on the People's motion to dismiss, the trial court admitted it had only glanced at the pleadings. (*Id*. at p. 1408.) No one complained. Defense counsel agreed the defendant's circumstances had not changed in a way that would justify going forward on the petition. (*Ibid*.) The record supported this conclusion, in that state hospital evaluations conducted the same month the petition was filed, concluded defendant was still an SVP who presented a danger to others. The petition did not allege facts to the contrary. (*Ibid*.)

*Reynolds* held the trial court did not abuse its discretion in dismissing the petition after merely glancing at it, because no one asked the court to read it carefully, and defense counsel conceded there was no change in defendant's circumstances from which to conclude defendant was no longer a danger to others. (*Reynolds*, *supra*, 181 Cal.App.4th at pp. 1406-1408.)

13

*Reynolds* further held trial counsel was not ineffective for agreeing to dismissal where there were no changed circumstances that would allow release. (*Reynolds*, *supra*, 181 Cal.App.4th at p. 1409.) The state hospital reports were "fatal to any chance defendant might have had of being released." (*Ibid.*) *Reynolds* rejected the defendant's argument that the trial court should have disregarded the state hospital reports and looked only at his petition. (*Ibid.*) The defendant argued he should not have to provide evidence beyond the "bare assertions" of the petition. (*Id.* at pp. 1409-1410.) *Reynolds* said that was "technically" correct, but a petition is subject to dismissal if it lacks factual or legal basis. (*Id.* at p. 1410.) The petition did not assert any expert opinion that the passage of four years reduced his risk of reoffending so as to justify release. (*Ibid.*) It merely referred to transcripts of unrelated SVP proceedings. It did not offer any authority for its claim that a certain test overstates the risk of reoffending. (*Ibid.*)

Here, trial counsel did not render ineffective assistance by agreeing to a "probable cause" hearing (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674, 693-694] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171), because the trial court was leaning toward a determination that the petition was frivolous, and counsel's agreement to a probable cause hearing avoided that immediate adverse result.

Even assuming for the sake of argument that McRoberts has not forfeited the matter or invited the procedural error, he still fails to show grounds for reversal.

The petition was frivolous because it relied on conclusions rather than facts. Instead of explaining what testimony the individuals would offer to justify a conclusion that McRoberts was no longer an SVP, the offer of proof simply asserted these individuals had some direct or indirect connection with his treatment and would supposedly testify -- in the exact language of the statute -- to a conclusion that his mental disorder no longer presented a danger to others. And, as indicated, the court may properly consider the state hospital report; *Olsen, supra*, 229 Cal.App.4th at p. 996), even if the SVP objects. We disagree with McRoberts's argument that the record thereby

14

shows a conflict necessitating a full evidentiary hearing. To the contrary, the state hospital report highlights the inadequacy and conclusory nature of the offer of proof, because it shows (1) the people who interacted with him thought he had made progress but still presented a danger, and (2) the hospital's progress notes contained numerous negative comments contrary to the offer of proof.

*Olsen, supra*, 229 Cal.App.4th 981, reversed a determination of frivolousness and remanded for reconsideration because the SVP's petition attached a clinical psychologist's evaluation that the SVP no longer met the SVP criteria. (*Id*. at p. 989.) The trial court erred in evaluating that evidence against the fact that a jury had rejected that same doctor's similar evaluation three years earlier in a prior SVP proceeding. (*Id*. at pp. 998-999.) Here, McRoberts's petition presented no evidence but only his conclusory offer of proof, facially defective for claiming nonqualified persons would say he no longer met SVP criteria. Although a petition need not append competent, admissible evidence (*Collins, supra*, 110 Cal.App.4th at p. 350), McRoberts's failure to do so left his petition vulnerable to dismissal in the face of the state hospital's annual report refuting his offer of proof as to what the hospital staff would say.

This case is not like McRoberts's cited authority, *Collins, supra*, 110 Cal.App.4th 340, which held the trial court improperly determined the SVP's petition was frivolous. There, the SVP's petition asserted his chemical castration, completion of the sex offender treatment program, and his health problems constituted a change of condition justifying conditional release. (*Id*. at p. 345.) The petition also appended letters from his doctors supporting release, and a doctor's report stating the SVP's risk was greatly reduced due to an antiandrogen treatment, and his determination to continue the medication was strong. (*Id*. at p. 351.) And the conflicting forensic reports supporting a cross-petition to extend the commitment focused on the danger if the SVP were *unconditionally* discharged, where the SVP sought only conditional release. (*Ibid*.)

15

On appeal, McRoberts makes claims unsupported by and/or contradicted by the record. He claims -- with no supporting citation to the record -- that his lawyer did not produce witnesses on March 12, 2012, because she believed the "probable cause" hearing was to be only a facial review of the petition. He cites *Strickland, supra*, 466 U.S. at p. 685 [80 L.Ed.2d at pp. 691-692], for the proposition that a fair trial is one in which evidence subject to adversarial testing is presented for resolution of issues "defined in advance of the proceeding." McRoberts claims that, as a matter of due process, he was not put on notice that there would be an evidentiary hearing on March 12, 2012. But trial counsel agreed to put off the matter until the report came in, obviously acknowledging the report could be considered. McRoberts claims that when his lawyer said she had nothing from specified witnesses to indicate McRoberts should be released, she meant she had not yet communicated with them. Nothing in the record supports his claim.

We conclude McRoberts fails to show grounds to reverse the order dismissing his petition.

DISPOSITION

The judgment (dismissal order) is affirmed.


                                      HULL             , J.


We concur:


RAYE           , P. J.


HOCH          , J.

16